IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DEBBIE CLARA TREVINO, ET AL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. M-04-377 |
| | § | |
| SOUTHWESTERN BELL TELEPHONE | § | |
| COMPANY, L.P., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

BE IT REMEMBERED that on September 26, 2005, the Court considered Plaintiffs' Motion To Remand. Dkt. No. 4.

I. **Procedural Background**

Plaintiffs, individual residents of the State of Texas, bring suit on behalf of themselves and a purported class of similarly situated individuals in the State of Texas. *See* Plaintiffs' Fourth Amended Original Petition. Defendant is a Texas Limited Partnership that provides both local and long-distance telephone services. *See id.* ¶ 3. Plaintiffs allege that Defendant has charged its customers a fee for the Texas Universal Service Fund ("TUSF") in contravention of its rate cap agreement under Texas Utility Code § 58.061(3), that Defendant violated its tariff filed with the Federal Communications Commission ("FCC") by charging a TUSF fee on top of its federal End User Common Line ("EUCL") charge, and that Defendant double billed its customers regarding its "Touch-tone" service. *See id.* ¶¶ 19, 29, 37. Plaintiffs assert five causes of action, all under state law — actions for declaratory and injunctive relief, unjust enrichment, breach of contract, and deceptive trade practices. *See id.* ¶¶ 40–59. Plaintiffs expressly disclaimed any remedies that may be available to them under

federal law.  *See id.* ¶ 31.  Only the breach of contract claim and the allegations regarding the TUSF surcharge on the EUCL charge are at issue in this motion.

Plaintiffs' Fourth Amended Original Petition was filed with the 275th Judicial District Court, Hidalgo County, Texas, in October 2004.  *See id.*  Defendant filed a notice of removal to this court on November 5, 2004, asserting that Plaintiffs' Fourth Amended Original Petition contained, for the first time, allegations giving rise to a federal question.  *See* Dkt. No. 1.  Plaintiff moved for remand on November 26, 2004, stating that no federal question was at issue and therefore the court had no subject-matter jurisdiction.  *See* Dkt. No. 4.  The Defendant has since filed a response (December 14, 2004) and a surreply to Plaintiffs' motion (April 18, 2005), and Plaintiffs have filed a reply to Defendant's motions (March 2, 2005).  *See* Dkt. Nos. 5, 10, 15.  Additionally, a hearing was held on April 25, 2005, at which time the court heard argument regarding the motion to remand from both parties and took the motion under advisement.

## II. Factual Background

In the interests of brevity and simplicity, the Court will only discuss the facts relevant to this motion.

In an effort to ensure adequate access to telephone communications for all individuals, including persons who are handicapped or who reside in rural areas, Congress has required all telecommunications carriers who provide interstate and/or international services to pay a portion of their revenues to the Federal Universal Service Fund ("FUSF").  *See* Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified in scattered sections of 47 U.S.C.).  Congress also permitted the states to require carriers of intrastate calls to contribute to state universal service funds; under this authority, Texas has created the TUSF.  *See id.*; *see also* AT&T Corp. v. Pub. Util. Comm'n of Tex., 373 F.3d 641, 643 (5th Cir. 2004).

Southwestern Bell Telephone Company (SWBT) provides both intrastate and interstate services and is therefore subject to both the FUSF and the TUSF.  *See* Plaintiffs' Fourth Amended Original Petition ¶ 5.  The interstate service provided by

SWBT is charged to its customers under the title "End User Common Line (EUCL) charge." *See id.* ¶ 24.

Furthermore, SWBT is subject to 47 U.S.C. § 203(a), which requires a carrier to file rates for each of its services with the Federal Communications Commission ("FCC"). SWBT may not charge a price that varies from this federally filed tariff.

Plaintiffs allege that SWBT has illegally imposed a TUSF surcharge on the EUCL charge, because this surcharge was not included in SWBT's federally filed tariff. *See id.* ¶ 30. It should again be noted that Plaintiffs disclaimed any federal remedies for this alleged violation. *See id.* ¶ 31. Instead, Plaintiffs assert that they are entitled to recover under state law for the overcharge created by the placement of the TUSF surcharge on the EUCL charge, as this amount was in excess of the rate filed with the FCC. *See id.* ¶ 33. Plaintiffs claim that this overcharge equates to a breach of contract, for which they are entitled to recover through theories of unjust enrichment or restitution. *See id.* ¶ 34. Plaintiffs further allege that SWBT misrepresented the rate charged to consumers in its federal tariff and that it misrepresented the rate approved by the FCC, both of which constitute violations of the Texas Deceptive Trade Practices Act ("DTPA"). *See id.* ¶ 35.

### III. Standard for Motion to Remand

Jurisdiction for removing an action originally brought in state court to federal court is authorized by 28 U.S.C. § 1441. This section permits a defendant to remove a civil case "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441 (2005). The burden to show that federal jurisdiction exists is on the party seeking removal. *See* Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988). Additionally, removal jurisdiction is to be strictly construed, as it "raises significant federalism concerns." *Id.* Thus, there is a presumption against federal jurisdiction.

In this case, there is no diversity jurisdiction, as the parties are both residents of the State of Texas. "[T]herefore, the propriety of removal depends on whether the case falls within the provisions of 28 U.S.C. § 1331 that: 'The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States.'" *Id*.

Unfortunately, the meaning of "arising under" is not altogether clear. A variety of definitions for the term have been proposed, some more effective in providing a cogent explanation than others. The most famous variations are those of Justices Holmes and Cardozo. Justice Holmes' test is relatively simple: "A suit arises under the law that creates the cause of action." Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916), *overruled by* Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 8–9 (1983). Plaintiffs' claims in this case clearly do not satisfy this test, as they are created by state law. Justice Cardozo's test, however, requires merely that a right or immunity granted by federal law be an essential element in the cause of action; furthermore, this test has been slightly altered to require only that the Plaintiffs' complaint necessitate "resolution of a substantial question of federal law." *See Willy*, 855 F.2d at 1168 (quoting *Franchise Tax Bd.*, 463 U.S. at 13); *see also* Gully v. First Nat'l Bank at Meridian, 299 U.S. 109, 112 (1936). Therefore, if the Plaintiffs' complaint requires the determination of a substantial question of federal law in order to determine the outcome of the case, federal jurisdiction is appropriate.

In examining removal jurisdiction, it is important to note that a plaintiff is generally the "master[] of the complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 395 (1987). Plaintiffs are usually granted the right to choose what claims they will litigate and the forum in which they will litigate them. *See id*. at 392. Typically, a plaintiff may avoid federal court by relying solely on state law causes of action. *See id*. Additionally, if a plaintiff asserts a claim which is supported by alternative and independent theories, one of which does not implicate federal law, there is no federal jurisdiction over the claim. *See* In re: Universal Serv. Fund Tel. Billing Practice Litig., 247 F. Supp. 2d 1215, 1228 (D. Kan. 2002) ("In re: USF") (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 810 (1998)). A defendant may defeat the plaintiff's choice of fora under some circumstances, however. *See, e.g.,* Hoskins v. Bekins Van Lines, 343 F.3d 769, 773 (5th Cir. 2003).

First, removal must be predicated on the well-pleaded complaint rule. *See id*. at

772. This rule requires the basis for removal to be clear on the face of the Plaintiffs' complaint. *See id.* (quoting *Caterpillar*, 482 U.S. at 392). The basis must be found in the plaintiff's affirmative allegations; it may not arise as a defense that the defendant may seek to raise. *See id.* Therefore, a defendant seeking removal must prove that the plaintiff's complaint provides federal jurisdiction. *See id.*

Second, the artful pleading doctrine stands as an exception to this rule. *See* Bauchelle v. AT&T Corp., 989 F. Supp. 636, 642 (D.N.J. 1997); In re: Comcast Cellular Telecomms. Litig., 949 F. Supp. 1193, 1199 (E.D. Pa. 1996). Under this doctrine, the plaintiff may not prevent federal jurisdiction by skillfully wording his complaint to avoid alleging necessary elements which give rise to federal jurisdiction. *See Bauchelle*, 989 F. Supp. at 642; *Comcast*, 949 F. Supp. at 1199. If the plaintiff's cause of action requires an element or a law which provides a basis for federal jurisdiction, that element or law will be inferred as a part of the well-pleaded complaint. *See Bauchelle*, 989 F. Supp. at 642; *Comcast*, 949 F. Supp. at 1199.

Finally, the complete preemption rule requires a claim which would otherwise be a state cause of action to be brought in federal court. *See Comcast*, 949 F. Supp. at 1198; *see also* Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987). In cases subject to this rule, Congress has seen fit to occupy the entire field in a given area, thereby converting all state law causes of action into federal causes of action. *See* Arnoult v. Gen. Elec. Capital Corp., 2003 U.S. Dist. LEXIS 20587, *24 (E.D. La. 2003). Thus, federal courts have jurisdiction over any claim in a field that has been completely preempted.

**IV.    Analysis**

Defendants removed this case in reliance on federal jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction). Defendants rely on two bases for removal — (1) that the Federal Communications Act ("FCA") completely preempts claims involving telecommunications carriers' federally filed tariffs and, in the alternative, (2) that Plaintiffs' well-pleaded complaint requires resolution of a substantial question of federal law. *See* Dkt. No. 1, ¶¶ 6, 7. In support of its second contention, Defendant asserts

three distinct claims made by Plaintiffs which give rise to federal jurisdiction — the claim that SWBT overcharged its customers (Plaintiffs' Fourth Amended Original Petition ¶ 33), the claim that SWBT breached its contract with its customers (¶ 49), and the claim that SWBT made false representations to its customers (¶ 55). *See* Dkt. No. 1, ¶ 5. Each of these possible bases of jurisdiction will be addressed in turn.

### *A. Complete Preemption*

Defendants first assert that this Court has jurisdiction because Plaintiffs' breach of contract, quantum meruit, and deceptive trade practices claims are completely preempted by the FCA. *See* Dkt. No. 1, ¶ 6. Defendants contend that Congress has chosen to preempt the entire field regarding interstate and international telecommunications, thereby providing federal jurisdiction over these claims. *See id*. The Court disagrees.

Defendants place great reliance upon *Cahnmann v. Sprint Corp.*, 133 F.3d 484 (7th Cir. 1998). In that case, Sprint filed a tariff with the FCC which offered "up to $1,000 worth per month of free long-distance calls on Fridays to anywhere in the world for one year" to any small business subscribing for at least $50 per month in long distance calls. *Cahnmann*, 133 F.3d at 486. Four months later, Sprint amended its tariff in a manner that changed the features of this program. *Id*. A class of several thousand members sued, claiming that the program, as amended, made them worse off than under the terms of the original tariff. *Id*. The court explained "that the filed tariff is the contract between the plaintiff . . . and Sprint." *Id*. at 487. Therefore, the question before the court was whether the federal remedy was exclusive or co-extensive with any state law remedy. *Id*. at 488. In determining its answer to this question, the Court first considered the FCA's savings provision, 47 U.S.C. § 414. *Id*. The Court held that, although the savings clause was broadly written, a literal interpretation of that clause "would effectively nullify the tariff provisions of the Communications Act." *Id*. The Court rejected this interpretation, concluding instead that the savings clause did not provide "a source of right to challenge the second tariff under state law." *Id*. The Court then addressed the question of whether the FCA "extinguishe[d] the right to bring a suit for

-6-

breach of contract under state law when the effect of the suit would be to challenge a tariff." *Id.* Noting that "Sprint's tariff . . . is the contract" and that a "tariff filed with a federal agency is the equivalent of a federal regulation," the Court held that federal law governed the contract and there were no contractual provisions which a state law could enforce. *Id.* at 488, 489. Therefore, the Court concluded, "[f]ederal law does not merely create a right; it occupies the whole field, displacing state law." *Id.* at 489.

This Court finds Defendant's reliance on *Cahnmann* to be misguided for two reasons. Most importantly, this Court finds that the majority of courts which have considered this issue, including the Fifth Circuit, have come to a different conclusion than the court in *Cahnmann*. *See, e.g.*, Fax Telecomms., Inc. v. AT&T, 138 F.3d 479, 486 (2d Cir. 1998) ("We concluded that after *Metropolitan Life*, 'federal common law does not completely preempt state law claims in the area of interstate telecommunications.'") (quoting Marcus v. AT&T Co., 138 F.3d 46, 54 (2d Cir. 1998)); Crump v. Worldcom, Inc., 128 F. Supp. 2d 549, 556 (D. Tenn. 2001) ("Thus, the court finds that the FCA does not have the preemptive force required for complete preemption."); Bauchelle v. AT&T Corp., 989 F. Supp. 636, 643–49 (D.N.J. 1997) (finding no congressional intent for removal and that the plaintiff's claims were not completely preempted). Notably, the Fifth Circuit very recently found a similar claim to that made by the Plaintiffs here to be preempted, but under *conflict* preemption. *See* AT&T Corp. v. Pub. Util. Comm'n of Tex., 373 F.3d 641, 645 (5th Cir. 2004). Conflict preemption occurs when a state law impedes the purpose or objective of a federal law, or when either a state law obliges the subject of the regulation to violate federal law or a federal law compels violation of a state law. *Id.* Conflict preemption normally arises as a defense to a state law claim; it does *not* equate to *complete* preemption. *See* Smallworld v. Ill. Cent. R.R., 342 F.3d 400, 408 n.53 (5th Cir. 2003). Therefore, the Fifth Circuit implicitly found that a similar claim did not give rise to complete preemption, by its holding that the claim was preempted under conflict preemption.[1]

---

[1] In discussing the holding by the Fifth Circuit regarding conflict preemption, the Court in no way intends to express any opinion regarding preemption of the Plaintiffs'

*See id.* ("[C]onflict preemption . . . fails to establish federal question jurisdiction.").

Additionally, as Defendant correctly states, in *Hoskins v. Bekins Van Lines*, 343 F.3d 769 (5th Cir. 2003), the Court laid out the current test for complete preemption in this circuit as:

> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.

*Hoskins*, 343 F.3d at 775 (quoting Johnson v. Baylor Univ., 214 F.3d 630, 632 (5th Cir. 2000)). In this case, the first two elements of this test are easily satisfied. Congress has provided a civil enforcement provision in 47 U.S.C. § 203 and a jurisdictional grant in 47 U.S.C. § 207. However, Defendant's argument runs aground at the third element. Nowhere does Defendant provide the Court with any source demonstrating Congressional intent to make these claims removable and the Court itself can find no such provision.[2] In fact, "Congress specifically provided for the preservation of existing statutory and common law claims in addition to federal causes of action." Heichman v. AT&T Co., 943 F. Supp. 1212, 1220 (C.D. Cal. 1995) (quoting Fin. Planning Inst., Inc. v. AT&T Co., 788 F. Supp. 75, 77 (D. Mass. 1992)). Therefore, this Court must agree with the numerous courts which have previously found that the FCA does not completely preempt the field of interstate telecommunications. *See, e.g.*, *Heichman*,

---

claim in this case. The Court has not considered whether Plaintiffs' claim is in fact preempted, as it is a possible defense to Plaintiffs' claim and, as such, does not serve to provide jurisdiction in this court. The Court discusses conflict preemption here only to emphasize its distinction with complete preemption, thereby providing the middle step in the Court's logical syllogism. Only complete preemption provides this Court with jurisdiction. *The only preemption claim possible in this case is conflict preemption, which does not amount to complete preemption.* Therefore this Court does not have jurisdiction over this case.

[2]The Court specifically notes that the jurisdictional provision, 47 U.S.C. § 207, provides for original jurisdiction in federal district courts over these claims, but does not mention removal jurisdiction in any form.

943 F. Supp. at 1220 ("AT&T's complete preemption argument has been rejected by several courts and accepted by none." (citation omitted)).

Moreover, Defendant's reliance on *Cahnmann* is further undermined by the fact that Plaintiffs in this case do not seek to challenge SWBT's filed tariff.[3] *See* Plaintiffs' Fourth Amended Original Petition ¶¶ 30, 33. Plaintiffs challenge fees charged on top of the filed tariff, not the actual rate in the tariff. *See id.* In *Cahnmann*, the court found state law claims to be preempted "when the effect of the suit would be to challenge a tariff." Cahnmann v. Sprint Corp., 133 F.3d 484, 488 (7th Cir. 1998). In this case Plaintiffs expressly disavow any intention to challenge the federal tariff under federal law. *See* Plaintiffs' Fourth Amended Original Petition ¶ 31. Instead, Plaintiffs contend that the alleged overcharges are not permissible under *Texas* law. *Id.* ¶¶ 33, 34. Thus, the contention is not that the tariff itself is illegal, but rather that the fees actually being charged are not permissible. As this is not a claim which seeks "to challenge a tariff," *Cahnmann* is inapplicable to this case.

### B. Substantial Question of Federal Law

As a preliminary matter, it is important to observe that "the mere presence of a federal issue is not sufficient to confer federal question jurisdiction." Heichman v. AT&T Co., 943 F. Supp. 1212, 1218 (C.D. Cal. 1995). Rather, there must be a federal issue that is dispositive of the claim. *See id.* In other words, there must be a substantial federal interest at stake for federal jurisdiction to exist. *See* In re: USF, 247 F. Supp. 2d 1215, 1224 (D. Kan. 2002). District courts are "instruct[ed] to apply the substantial federal question doctrine with caution." *Id.* Only if the Plaintiffs' well-pleaded complaint raises a substantial, disputed question of federal law will this court have jurisdiction over the case. *See* Willy v. Coastal Corp., 855 F.2d 1160, 1168 (5th Cir. 1988) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983)).

---

[3]One exception to this is the breach of contract claim. In that claim, the tariff is the contract; therefore, a challenge to the contract is a challenge to the tariff. This claim will be addressed separately. *See infra* IV.B.2.

Defendant identifies three claims by the Plaintiffs which it argues require interpretation of a substantial question of federal law. These include claims that SWBT overcharged its customers (Plaintiffs' Fourth Original Amended Petition ¶ 33), that SWBT breached its contract with its customers (¶ 49), and that SWBT made false representations to its customers (¶ 55). Each of these claims is discussed below.

**1. Overcharges**

Plaintiffs allege in ¶ 33 of their Fourth Amended Original Petition that "[t]he TUSF surcharge on the EUCL charge recovered by SWBT from its residential and business customers is a rate charged in excess of the filed rate for the EUCL charge contained in SWBT's federal tariff." Defendant relies on this claim as one of its bases for removal jurisdiction. Dkt. No. 5. Defendant is misguided in this reliance.

In *Pan-American Petroleum Corp. v. Superior Court*, 366 U.S. 656 (1961) (*Pan Am*), the plaintiff and the defendants entered into contracts for the sale of gas. *See id.* at 658. While those contracts were in force, the State of Kansas passed a law setting a minimum purchase price for gas, which minimum price was higher than the price under the existing contracts. *See id.* Plaintiff sought a declaration that the Kansas order was unconstitutional and was eventually successful. *See id.* at 658, 660. Plaintiff then sued defendants for overcharges based on the difference in rates between the price actually paid and the lower contract-based price. *See id.* at 661. Despite defendants' contention that the Natural Gas Act deprived state courts of jurisdiction, the Delaware courts heard the case. *See id.* The Supreme Court, on review of the decision that state courts retained jurisdiction, stated that "traditional common-law claims . . . do not lose their character because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas" and held that the provisions of the Natural Gas Act, which required defendants to file their rates, had

> been brought into the cases by way of defense to complaints which, on their face, [were] based on nothing more than contracts to refund amounts measured by the contract or 'filed' rate and the rate fixed by the Kansas order. The general rule is that in such a case the plaintiff's suit is not one arising under federal law . . . .

*Id.* at 661, 663 (quoting Columbian Fuel Corp. v. Superior Court, 158 A.2d 478, 483 (Del. 1960)). Therefore, the Supreme Court held that state courts retained jurisdiction.

For the implications of this decision for the case *sub judice*, however, we must turn to a later Supreme Court case — *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571 (1981) ("*Arkla*"). In that case, the Court clarified that *Pan Am* "stated only that a state rather than a federal court was the proper forum in which a buyer should bring a breach-of-contract action to obtain a refund of charges in *excess* of the filed rate." *Id.* at 582 n.12. Therefore, it is clear that claims for a refund of charges in excess of a filed rate should be brought in state, not federal, court.

In this case, the Defendant attempts to distinguish *Pan Am*, stating that "Plaintiffs plainly assert rights under the FCA and SWBT's filed tariff as the basis for their claims." Dkt. No. 5, at 10. So far as this contention relates to the claims in Plaintiffs' Fourth Amended Original Petition ¶ 33, the Court disagrees.

In Plaintiffs' Fourth Amended Original Petition ¶ 33, Plaintiffs claim that they were overcharged by an amount equal to the difference between the federally filed tariff plus the TUSF surcharge on the EUCL and the rate listed in the tariff (*i.e.*, just the EUCL, without the additional TUSF surcharge). According to the Defendant, this claim raises a substantial question of federal law.[4] Dkt. No. 5, at 7. In the Court's estimation,

---

[4]Defendant relies on *In re: Universal Serv. Fund*, 247 F. Supp. 2d 1215 (D. Kan. 2002) (*In re: USF*), as support for its position. Dkt. No. 5, at 7–8. The Court finds this case to be inapposite, however. First, in *In re: USF*, the excessive charges were for the *Federal* Universal Service Charge, not a *state* Universal Service Charge. *In re: USF*, 247 F. Supp. 2d at 1218. While this may appear, at first glance, to be a trivial distinction, in application it is gravely important. The federal fund is authorized by the FCA, but state funds must be authorized by both the federal and state governments. Thus, there is a question whether state law authorized the TUSF surcharge. This presents the possibility of an independent and adequate state ground of decision on the merits of this case. Second, to the extent that the Court in *In re: USF* held that any excessive USF charge arises under the FCA, this Court must, in light of the Supreme Court's holding in *Pan Am*, respectfully disagree. The Supreme Court specifically held that a claim for a refund of an overcharge of an amount equal to the difference between an authorized amount under a state claim and the amount authorized by federal law did not arise under federal law. Thus, this Court is constrained to find that the claim *sub*

however, this claim only has a tangential relation to federal law.  Essentially, the claim is that the TUSF surcharge is inappropriate.  Federal law may come in as a defense to this claim by way of a claim of preemption, but defenses do not give rise to federal jurisdiction.[5]  On the other hand, if Plaintiffs were to attack the validity of the filed rate, alleging that the TUSF surcharge should be a part of it, then it might arise under federal common law.  However, Plaintiffs did not do this.  Instead, Plaintiffs claim that the TUSF surcharge is an overcharge.  Since Plaintiffs seek merely a refund of the overcharge consisting of the difference between the filed rate and the rate allegedly permitted by Texas law, this claim relates to state law.  Plaintiffs' Fourth Amended Original Petition ¶¶ 33, 34.  Like that in *Pan Am*, this claim "is not one arising under federal law."  Pan Am., 366 U.S. 656, 661 (1961) (quoting Columbian Fuel Corp. v. Superior Court, 158 A.2d 478, 483 (Del. 1960)).[6]

### 2. Breach of Contract

A more difficult question is raised by Plaintiffs' allegation of breach of contract in Plaintiffs' Fourth Amended Original Petition ¶ 49.  In this claim, Plaintiffs correctly allege that SWBT's federal tariff creates a contract with its customers.  *Id.*  Plaintiffs then allege that Defendant breached this contract "by billing its customers for a TUSF surcharge . . . that is not contained in the federal tariff."  *Id.*  Defendants contend that this claim requires interpretation of the FCA and therefore arises under federal law. Dkt. No. 1, ¶ 6.  Although this Court finds this to be a much more difficult question than any of Defendant's other bases for jurisdiction, the Court disagrees.

A federal tariff constitutes a contract between the filing party and its customers. *See* Cahnmann v. Sprint Corp., 133 F.3d 484, 487 (7th Cir. 1998).  Furthermore, the

---

*judice* does not arise under federal law.

[5]Again, the Court makes no finding regarding whether or not the claim is actually preempted.

[6]If Plaintiffs had plead for federal remedies, perhaps that would be a different matter, but Plaintiffs specifically rejected any possible federal remedy.

-12-

tariff is more than just a contract; the tariff itself *is* federal law. Thus, federal courts generally have jurisdiction over breach of contract actions involving federal tariffs, because any claim necessarily requires interpretation of a federal law. *See id.*

Furthermore, there is authority to support the Defendant's position in this case. For example, in *Amoco Chemical Co. v. Tex Tin Corp.*, 902 F. Supp. 730 (S.D. Tex. 1995), the Court held that a breach of contract action predicated upon "a private contract which obligated Defendant Tex Tin Corp. . . . to reimburse Amoco for expenses incurred under an Administrative Order on Consent involving the United States Environmental Protection Agency" provided the court with jurisdiction. *Amoco Chem.*, 902 F. Supp. at 731. The Court found that the Administrative Order had to be interpreted to determine whether or not there was any duty of reimbursement. *Id.* at 735. The interpretation of the Order was governed by federal law. *Id.* Therefore, the case involved a substantial question of federal law. *Id.* Additionally, in *In re: Comcast Cellular Telecommunications Litig.*, 949 F. Supp. 1193 (E.D. Penn. 1996), the Eastern District of Pennsylvania found removal of claims related to the time for which customers were billed was proper. *In re: Comcast*, 949 F. Supp. at 1206. The plaintiffs in the case alleged that Comcast billed for time during which no actual communication occurred. *Id.* at 1196. The Court found this allegation "present[ed] a direct challenge to the reasonableness of Defendant's billing practices." *Id.* at 1200. The Court determined that the substance of the claim was a challenge to the rates charged by the Defendant. *Id.* at 1201. The Court then went on to hold that the claim was really a claim under federal law and that a challenge of this nature was preempted by the FCA. Thus, removal was proper. *Id.*

This case, however, involves different issues. Here, Plaintiffs' breach of contract claim does not necessitate any interpretation of the federal tariff. As discussed *supra*, the Fifth Circuit held that a TUSF charge could not be assessed on interstate and international telecommunications services. *See* AT&T Corp. v. Pub. Util. Comm'n of Tex., 373 F.3d 641 (5th Cir. 2004) ("AT&T v. PUC"). In that case, AT&T challenged the Texas Public Utility Commission's ("PUC") assessment of a TUSF charge on interstate

and international calls originating in Texas. *Id.* at 644. The Court first discussed the difference in the charges assessed to purely intrastate or interstate telecommunication service providers, consisting of either a TUSF or a FUSF fee, and providers of both inter- and intrastate services, consisting of both TUSF and FUSF fees. *Id.* at 646–47. Finding that "the double assessment of interstate revenue puts multijurisdictional carriers at a distinct disadvantage with the pure interstate carriers," the Court held that the TUSF assessment on interstate services was "discriminatory and in violation of [47 U.S.C.] § 254(f)." *Id.* at 647. The Court therefore concluded that "the PUC assessment of interstate and international calls . . . [was] preempted by federal law." *Id.* This holding clearly states that a TUSF charge may not be assessed against interstate telecommunication service. Here, Plaintiffs allege SWBT charged them for a TUSF fee on interstate telephone calls. Thus, if the conduct alleged did actually occur, it was illegal.[7] Therefore, the issue under this claim is not the legal issue of whether the alleged conduct was permissible, but rather a factual issue of whether the conduct

---

[7]Defendant attempts to characterize this issue as a legal issue, rather than a factual one. *See* Dkt. No. 5, at 6. Defendant contends that the TUSF charge is "a legal charge for funding Universal Service in Texas." *Id.* Defendant then argues that the question of whether the TUSF charge assessed on interstate telephone service is permissible or is an impermissible surcharge is a legal issue. *Id.* However, this question is a factual issue. After *AT&T v. PUC*, it is clear that there cannot be a TUSF surcharge on interstate calls for SWBT to pass on to its customers. Therefore, there cannot be a legal question. The question is factual. The state court will need to determine whether the charge is properly characterized as either a TUSF charge not included in the tariff or as a legal charge for funding Universal Service. The legal outcome of this determination is not in question.

The Court further notes that this issue lies in a gray area between legal and factual issues. This could be characterized as a legal interpretation of a contract or as a factual determination regarding elements in the contract. The Court finds the latter characterization to be correct, as the legal ramifications of the decision are not in dispute. Further, if the Court were to characterize it as a legal interpretation, the Defendant would have already conceded the point, by stipulating that it passed on a TUSF charge to its customers for all telecommunications services. Dkt. No. 5, at 6. Thus, if this were a legal question, and not a factual one, the issue would not be in dispute and therefore would not provide a "disputed" question of federal law.

occurred at all.[8]  With no legal issue at stake, there is no substantial question of federal law, and no federal jurisdiction over the claim.  *See In re: USF*, 247 F. Supp. 2d at 1225-26 (noting that questions of fact, and not law, have been found to not arise under federal law).

Moreover, the Court finds that this case is more akin to *Heichman v. AT&T Co.*, 943 F. Supp. 1212 (C.D. Cal. 1995), which Defendant attempts to distinguish, than to any case supporting removal jurisdiction.  In *Heichman*, the Court found that the plaintiff's breach of contract action, involving the collection of state and local taxes on non-intrastate phone calls, did "not involve the . . . reasonableness of [AT&T's] rates" and did not "arise out of a duty created by the Act." *Heichman*, 943 F. Supp. at 1221.  The court held, instead, that the claims were based on AT&T's obligation under local law to collect taxes and the resulting contract for the collection of those taxes.  *Id*.  The court concluded that the it had no jurisdiction over the plaintiff's claims.  *Id.* at 1222.

Here, Plaintiffs' claim is similar to that in *Heichman*.  Plaintiffs claim that the imposition of the TUSF surcharge constitutes a breach of contract by SWBT.  The claim does not allege that the charge was unreasonable, but rather that there was an additional fee added to the charge.  Furthermore, this fee arose out of a duty purportedly created by state law, not by the FCA.  Thus, this Court agrees with the *Heichman* court's finding that there is no federal question jurisdiction in this case.

Finally, this Court also notes another basis for its finding of no jurisdiction over this claim.  "[I]f a claim is supported not only by a theory establishing federal subject

---

[8]Again, this is a factual issue.  The Court notes that Defendant appears to admit the facts at issue: "SWBT and the Plaintiffs agree that SWBT passed the TUSF charge on to its customers by assessing customers a percentage of all retail telecommunications services that are subject to sales tax."  Dkt. No. 5, at 6.  That a TUSF charge may not be assessed on interstate or international calls has been settled by the Court's holding in *AT&T v. PUC*, as discussed *supra* note 8.  However, this Court makes no finding regarding Defendant's potential liability, as the Fifth Circuit determined that the Texas Public Utility Commission could not charge a TUSF fee for these calls, so that there would be nothing for SWBT to pass on to its customers.  Therefore, whether anything was passed on to customers, and, if so, whether it was included in SWBT's tariff, are not questions presently before this Court.

matter jurisdiction but also by an alternative and independent theory that does not establish such jurisdiction, then federal subject matter jurisdiction does not exist." *In re: USF*, 247 F. Supp. 2d at 1228 (interpreting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 810 (1998)); *see also* Willy v. Coastal Corp., 855 F.2d 1160, 1170 (5th Cir. 1988) (finding no federal removal jurisdiction because plaintiff's federal claim was not necessary and plaintiff's state claim was sufficient). In this case, Plaintiffs' Fourth Amended Original Petition ¶ 49 is alleged as an alternative to ¶ 48. Plaintiffs, in ¶ 48, allege that "SWBT's General Exchange Tariff and Local Exchange Tariff and provision of services thereto constitutes a contractual agreement with its customers." Plaintiffs then allege that the Public Utility Regulatory Act ("PURA") was incorporated into this contract, and that charges were collected in violation of the PURA. Plaintiffs' Fourth Amended Original Petition ¶ 48. Plaintiffs contend that by violating the PURA, Defendant breached its contract with its customers. *Id.* The claim that a contract was created involving the PURA and that Defendant breached this contract is governed exclusively by state law. Any possible issue of federal law could only arise under a theory of preemption, which may arise as a defense to this claim.[9] Thus, this claim presents an adequate and independent state ground of decision for the same relief, thereby precluding this court from acquiring jurisdiction under ¶ 49.

### 3. False Representations

Defendant's final basis for removal jurisdiction stems from ¶ 55 of Plaintiffs' Fourth Amended Original Petition. In this claim, Plaintiffs assert that SWBT made certain false representations regarding the TUSF surcharge — (1) that the FCC approved its inclusion in the End User Access Service ("EUAS") fee; (2) that the amount of the EUAS charge was higher than SWBT's representations; and (3) that SWBT was entitled to charge the TUSF surcharge. Plaintiffs' Fourth Amended Original Petition ¶ 55. Defendant contends that these misrepresentation claims require interpretation of the tariff, which is federal law, thereby providing federal jurisdiction.

---

[9]Of course, this Court does not comment on the validity of this argument.

*See* Dkt. No. 5, at 9. These arguments are quickly dispatched.

Claims for misrepresentations of rights and of amounts billed to customers are created under state law. *See* In re: USF, 247 F. Supp. 2d 1215, 1225, 1226 (D. Kan. 2002), and cases cited therein. In this case, Plaintiffs allege that SWBT falsely represented it had rights it did not and that the amount it charged customers varied from the amount it told them it billed. *See* Plaintiffs' Fourth Amended Original Petition ¶ 55. Defendants rely on these claims as a basis for federal jurisdiction. *See* Dkt. No. 5, at 9. However, "federal law expressly allows a plaintiff - as Plaintiffs here - to pursue state-law claims based upon a long distance provider's misrepresentations." Crump v. Worldcom, Inc., 128 F. Supp. 2d 549, 556 (D. Tenn. 2001) (citing AT&T Co. v. Cent. Office Tel., Inc., 524 U.S. 214, 222 (1998)).[10] Therefore, Plaintiffs were entitled to pursue their state law claims regarding these misrepresentations. Furthermore, by expressly disavowing any federal remedies they might have, Plaintiffs have precluded this court from exercising jurisdiction over this claim, because there is no federal question involved. *See* Plaintiffs' Fourth Amended Original Petition ¶ 31. Thus, this Court is constrained to order remand of this issue.

## C. Presumption Against Removal

Finally, this Court again notes that there is a presumption against removal to federal court. *See* Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988); In re: USF, 247 F. Supp. 2d 1215, 1223 (D. Kan. 2002). Defendant, as the party moving for removal, bears the burden of proving that removal jurisdiction exists. *See Willy*, 855 F.2d at 1164. "[A]ll doubts should be resolved against removal and in favor of remand to the state court." Bauchelle v. AT&T Corp., 989 F. Supp. 636, 644 (D.N.J. 1997). Removal jurisdiction must be based on the Plaintiffs' "well-pleaded complaint" and may

---

[10] Also, Defendant has obligations, under State law, to be truthful in its advertising and marketing. *See* Bauchelle v. AT&T Corp., 989 F. Supp. 636 (D.N.J. 1997). Here, Defendant's alleged representations regarding the charges it was permitted to bill to Plaintiffs and the amount of individual items on customers' bills, if proven, would be tantamount to advertising deceptively. Thus, Plaintiffs' charges were properly brought under state law.

not rely on any possible, or even probable, federal questions that will be raised in Defendant's defense or a counterclaim. *See Willy*, 855 F.2d at 1164.

In this case, the Court finds that there are, at best, numerous doubts regarding removal jurisdiction in this case. Therefore, in the interests of comity with the State courts and of federalism, those doubts must be resolved in favor of remand. *See Willy*, 855 F.2d at 1164; *In re: USF*, 247 F. Supp. 2d at 1223.

**V. Costs and Attorney's Fees**

Plaintiffs have also requested that this Court award costs and attorneys' fees associated with Defendant's notice of removal. *See* Dkt. No. 4, ¶¶ 44–53. "The Court has discretion to award fees upon remand of an improperly removed action." Heichman v. AT&T Co., 943 F. Supp. 1212, 1222 (C.D. Cal. 1995) (citing 28 U.S.C. 1447(c) (2005)). The Court need not find "'bad faith, or that the removal was 'frivolous' or vexatious'" to make such an award. Braco v. MCI Worldcom Commc'ns, Inc., 138 F. Supp. 2d 1260, 1266 (D. Cal. 2001). Thus, the Court must determine whether such an award would be proper. *See id*.

The Court does not believe that such an award would serve the ends of justice in this case. The jurisdictional issues involved in this case are complex and difficult. This can be evidenced both by the length of this order and the number of pleadings submitted by the parties. Furthermore, the Court finds that there was no clear authority regarding the propriety of removing this case; thus, the Court does not find grounds for requiring SWBT to assume all of the costs and fees associated with the attempt to remove this case.

**VI. Conclusion**

For the foregoing reasons, Plaintiffs' motion to remand is **GRANTED**. The Court also **ORDERS** that the case be remanded to the 275th Judicial District Court, Hidalgo County, Texas.

FURTHERMORE, Plaintiffs' request for costs and attorney's fees is **DENIED**.

DONE at Brownsville, Texas, this 26th day of September 2005.

_____

Hilda G. Tagle

United States District Judge